IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:19-CV-148-D

|  |  |
|---|---|
| PEDRO LOSA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| MARCO GHISOLFI, ) | |
| ) | |
| Defendant. ) | |

On May 14, 2019, Pedro Losa ("plaintiff" or "Losa") sued Marco Ghisolfi ("Ghisolfi" or "defendant") in the Superior Court of New Hanover County and alleged a breach of contract claim and a quantum meruit claim [D.E. 1-1]. Ghisolfi was the CEO of M&G Chemicals S.A. ("M&G Chemicals") and Losa worked for M&G Chemicals. M&G Chemicals filed for bankruptcy, and M&G Chemicals did not pay Losa severance. In his complaint, Losa seeks to hold Ghisolfi personally liable for $675,000 in severance.

On August 9, 2019, Ghisolfi removed the case to this court [D.E. 1]. On August 16, 2019, Ghisolfi moved to dismiss the complaint and filed a supporting memorandum [D.E. 8, 9]. See Fed. R. Civ. P. 12(b)(6). On September 9, 2019, Losa responded in opposition [D.E. 10]. On September 23, 2019, Ghisolfi replied [D.E. 12]. On December 3, 2019, the court held an extensive hearing concerning the motion to dismiss. At the end of the hearing, the court explained in detail why Losa's allegations failed to state a claim, dismissed the complaint without prejudice for failure to state a claim upon which relief can be granted, but allowed the Losa to file an amended complaint [D.E. 19, 27]. On that same date, the court issued an order that incorporated by reference its reasoning and conclusions from the hearing [D.E. 20].

On December 13, 2019, Losa filed an amended complaint, again alleging a breach of contract claim and a quantum meruit claim [D.E. 21]. On January 10, 2020, Ghisolfi moved to dismiss the amended complaint and filed a supporting memorandum [D.E. 24, 25]. See Fed. R. Civ. P. 12(b)(6). On January 31, 2020, Losa responded in opposition [D.E. 28]. On February 14, 2020, Ghisolfi replied [D.E. 29]. Because Losa's amended complaint fails to state a claim upon which relief can be granted, the court grants Ghisolfi's motion to dismiss and dismisses with prejudice the amended complaint.

I.

Losa is a citizen and resident of New Hanover County, North Carolina. Losa worked for Chemtex International, Inc. ("Chemtex") for 33 years, eventually becoming its president and CEO in 2010. See Am. Compl. [D.E. 21] ¶¶ 1, 9. In December 2001, Chemtex agreed to build a plant for the Mossi & Ghisolfi Group S.A. ("M&G Group") in Mexico (the "Mexico Project") by the end of the first quarter of 2003. See id. at ¶¶ 10–11. M&G Group produced, marketed, and sold chemical products. See id. at ¶ 5. M&G Group "own[ed] and controll[ed] various wholly-owned subsidiaries with operations in Europe, the United States, South America, and Asia." Id. Until the summer of 2015, M&G Group was a "family owned business," with Vittorio Ghisolfi serving as president, his son Guido Ghisolfi serving as vice president primarily in charge of operations, and Marco Ghisolfi serving as CEO and managing director primarily in charge of financial affairs. See id. at ¶ 6.

At the contract celebration for the Mexico Project, Vittorio Ghisolfi "look[ed] at Losa in the eye, point[ed] to him and, with a smile sa[id], 'if you don't deliver as committed, I will find you.'" Id. at ¶12. Losa then operated the Mexico Project for Chemtex at the request of Guido Ghisolfi, which required Losa to take a leave of absence as Vice President of Chemtex. See id. at ¶ 13.

2

During the Mexico Project, Losa encountered difficulties concerning the contractor, who threatened to have Losa kidnaped and deported from Mexico. See id. at ¶ 14. Losa informed Guido Ghisolfi of this threat, who urged Losa not to abandon the project. See id. at ¶ 15. The Mexican police eventually arrested Losa. See id. at ¶ 16. After his release on bail, Losa's conflicts with the contractor continued. See id. According to Losa, Guido Ghisolfi personally reached a settlement with the contractor and used his own personal funds to do so, with the Ghisolfi family's blessing. See id. at ¶ 17. Losa ultimately delivered the Mexico Project on time. See id. at ¶ 18.

In 2004, the M&G Group through its subsidiary M&G Chemicals acquired Chemtex. See id. at ¶ 8. Between 2004 and 2010, Losa and the Ghisolfi family remained close. See id. at ¶ 19. In 2010, the M&G Group promoted Losa to president and CEO of Chemtex. Losa held that position until 2016. See id. at ¶ 20. Although Losa had a close relationship with the Ghisolfi family as a whole, his relationship with Marco Ghisolfi deepened when Guido Ghisolfi committed suicide in 2015. See id. at ¶¶ 22–23. After Guido's death, Marco Ghisolfi asked Losa to travel to Italy on a monthly basis to discuss business operations. See id. at ¶ 24. Marco Ghisolfi also asked Losa to look into the feasability of substantial reductions in the Chemtex workforce in order to free up cash for the Italian operations of M&G Group. See id. at ¶ 25. To induce Losa to undertake this task, Marco Ghisolfi told Losa that if Losa could save M&G Group $10,000,000 in cost, Losa would receive up to $1,000,000. See id. at ¶ 26. This promise was not in writing. See id. at ¶ 28. Nonetheless, Losa began cutting costs. See id. In early 2016, although he did not meet the $10,000,000 goal, Losa received $700,000 "as [Marco Ghisolfi] believed Losa should be rewarded for the costs that were saved." Id. at ¶ 29.

During their meetings following Guido Ghisolfi's death, Marco Ghisolfi also asked Losa to relocate to Italy to take over the "bio energy" part of M&G Group that Guido had been running. See

3

id. at ¶ 30. Losa accepted the position, albeit with no legally binding agreement concerning conditions of employment or payment. See id. at ¶ 31. While transitioning to his role in Italy, Losa raised concerns about a M&G Group project in Corpus Christi, Texas, called Project Jumbo. See id. at ¶¶ 32, 37. According to Losa, Marco Ghilsofi told managers that Losa was the only person that could help save Project Jumbo. See id. at ¶ 33. In October 2015, Marco Ghisolfi asked Losa to go to Texas and report back concerning Project Jumbo, a task which Losa accepted. See id. at ¶ 34. Beginning in early 2016, Losa spent most of his time on site at Project Jumbo at Marco Ghilsofi's request. See id. at ¶ 37.

As part of accepting the Project Jumbo assignment, Losa "informed [Marco Ghilsofi] that [he] would need a personal financial guarantee of compensation in the event that something happened with the [M&G] Group because of Project Jumbo." Id. at ¶ 38. In addition, Losa conditioned this acceptance on the assurance that he would receive severance if Project Jumbo failed. See id. at ¶ 39. Accordingly, "[Marco Ghilsofi] personally assured Losa that if [Losa] took on this role as Manager [of Project Jumbo], that his severance would be paid." Id. at ¶ 40. Losa continued to work on Project Jumbo over a period of several months. See id. at ¶ 41.

On December 22, 2016, Marco Ghisolfi, as CEO of M&G Chemicals, executed a confirmation memorandum (the "memorandum") concerning Losa's work on Project Jumbo. See id. at ¶ 42. Section 2 of the memorandum, "Severance Compensation — Terms & Conditions," states in relevant part:

> In the event you are involuntarily terminated by M&G Chemicals (or the "Company") through its Board of Directors, or through [Ghisolfi], as CEO of M&G Chemicals, the Company will provide you with severance compensation in a total amount not to exceed Six-Hundred Seventy-Five Thousand ($675,000) US dollars.

[D.E. 21-1] 3. On January 8, 2017, Marco Ghisolfi emailed Losa the memorandum. See id. at ¶ 44.

4

In the email, Marco Ghisolfi stated: "get me out of the hole and I will reward you" and "spit blood to get me out of the whole, if in spite of this something goes wrong, you'll get your severance." [D.E. 21-2] 2; Am. Compl. ¶ 45. On that same date, Marco Ghisolfi called Losa "to reassure him about the protection the severance package was to have, and that no matter what happened, Losa would be protected, regardless of what was in writing." Am. Compl. ¶ 46. According to Losa, Marco Ghisolfi knew, or reasonably should have known, that his personal assurances to Losa, and the "close and confidential relationship" that the two shared, had formed the principal basis for Losa agreeing to the memorandum with M&G Chemicals. Id. at ¶¶ 47–51. Losa understood the memorandum to not be a fully integrated agreement and that Marco Ghisolfi's personal assurances did not have to be documented in a separate writing due to their close relationship. See id. at ¶ 52.

In July 2017, Marco Ghisolfi reassured Losa that M&G Group would have the funds needed to complete Project Jumbo. See id. at ¶ 55. However, Marco Ghisolfi only visited Project Jumbo twice over the course of 2017 and reduced his contact with Losa. See id. at ¶ 57. According to Losa, Marco Ghisolfi "knew it was unlikely that the funds could be acquired to complete [Project Jumbo]." Id. at ¶ 56. Nevertheless, Losa relied on Marco Ghisolfi's assurances and did not take an offered position in Italy or take more than $200,000 in accumulated paid time off in order to assist Marco Ghisolfi. See id. at ¶ 58. Losa "gave his word to [Marco Ghisolfi] that he would expend all his energy into saving Project Jumbo until the end, and knew similarly that [Marco Ghisolfi] would honor his personal commitments." Id.

In October 2017, M&G Chemicals declared bankruptcy. See id. at ¶ 60. According to Losa, Ghisolfi began to have concerns about his "pledge of personal responsibility" after the bankruptcy, and inquired in 2018 about "Losa's ability to hold him personally responsible for the payment of severance." Id. at ¶ 61. On December 13, 2018, Marco Ghisolfi called Losa and told him it would

5

be futile, and a waste of money, to take legal action for his severance. See id. at ¶ 63. On December 28, 2018, M&G Chemicals terminated Losa's employment and he received no severance from M&G Chemicals. See id. at ¶ 64. Losa demanded that Marco Ghisolfi pay Losa $675,000 in severance, but Marco Ghisolfi refused. See id. at ¶ 66.

Losa makes two claims against Marco Ghisolfi. First, Losa alleges that Marco Ghisolfi breached a contract between them by failing to personally pay Losa's $675,000 in severance upon Losa's termination from M&G Chemicals. See id. at ¶¶ 68–80. Second, and alternatively, Losa alleges that Marco Ghisolfi was unjustly enriched by the services that Losa provided. See id. at ¶¶ 81–89.

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[ ] [his]

6

claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may also consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity." Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

The motion to dismiss requires the court to consider Losa's state-law claim against Marco Ghisolfi, and the parties agree that either North Carolina or Texas law applies. Accordingly, this court must predict how the Supreme Court of North Carolina or the Supreme Court of Texas would rule on any disputed state law issues. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina or the Supreme Court of Texas. See id.; Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from these courts, this court may consider the opinions of the court of appeals of the respective state, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted).[1] In predicting how the highest court of a state would address an issue, this court must "follow the decision of an

---

[1] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013).

7

intermediate state appellate court unless there [are] persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotation omitted); see Hicks v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmerman, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999)

In his amended complaint, Losa does not allege any new legal claims against Marco Ghisolfi. Compare Compl. [D.E.1-1] ¶¶ 23–44 with Am. Compl. ¶¶ 68–89. Instead, Losa adds numerous alleged facts concerning the personal relationship between himself and Marco Ghisolfi to support why Marco Ghisolfi should be held personally liable for severance of $675,000. See Am. Compl. ¶¶ 5–67. These additions are not enough. Under either North Carolina or Texas law, Losa's amended complaint against Marco Ghisolfi fails for the reasons stated at the court's hearing on December 3, 2019. See Hearing Tr. [D.E. 27] 10–12, 16–25. The court incorporates by reference the reasoning announced at the hearing, as well as the persuasive analysis that Marco Ghisolfi provided in his memoranda. See id.; [D.E. 25] 12–30; [D.E. 29] 4–13; Fitzgerald Fruit Farms LLC v. Aseptia, Inc., No. 5:18-CV-437-D, 2019 U.S. Dist. LEXIS 103842, at *6–7 (E.D.N.C. June 20, 2019) (unpublished); Owens v. Hous. Auth. Of San Augustine, No. 12-12-00034-CV, 2013 Tex. App. LEXIS 6348, at *13 (Tex. App. May 22, 2013). Based on the court's "judicial experience and common sense," Losa's amended complaint alleges insufficient facts to nudge his claims from possible to plausible. Iqbal, 556 U.S. at 679; see Twombly, 550 U.S. at 570. Accordingly, the court grants Marco Ghisolfi's motion to dismiss.

III.

In sum, the court GRANTS defendant's motion to dismiss [D.E. 24] and DISMISSES WITH PREJUDICE the amended complaint. The clerk shall close the case.

SO ORDERED. This 13 day of July 2020.

JAMES C. DEVER III
United States District Judge

9